UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MINDY JEWELDEAN ROSIN,

        Plaintiff,                                     Civil Action No. 10-cv-11742

    v.                                         District Judge Victoria A. Roberts
                                                Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [10, 15]**

Plaintiff Mindy Jeweldean Rosin ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Both parties filed summary judgment motions (Dkts. 10, 15) which are presently before this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), (Dkts. 2, 16).

**I. RECOMMENDATION**

For the following reasons, the Court finds that the Administrative Law Judge ("ALJ") followed the mandates of SSR 96-7p in assessing Plaintiff's credibility, and substantial evidence supports the ALJ's finding that Plaintiff was not disabled during the period at issue. Accordingly, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, that Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED.

**II. REPORT**

    **A. Procedural History**

Plaintiff alleges that she became unable to work on September 1, 1988. (Tr. 122.) Plaintiff protectively filed her application for DIB on July 18, 2006. (*Id.*) The Commissioner denied Plaintiff's disability application on October 4, 2006. (Tr. 69.) Plaintiff then filed a request for a hearing, and on September 23, 2009, she appeared with counsel before ALJ Troy M. Patterson who considered the case *de novo*.[1] (Tr. 46.) In a September 25, 2009 decision, the ALJ found that Plaintiff was not disabled. (Tr. 9-19.) The ALJ's decision became the final decision of the Commissioner on March 5, 2010 when the Appeals Council denied Plaintiff's request for review. (Tr. 1-3.) Plaintiff filed this suit on April 29, 2010.

    **B. Background**

Plaintiff was 43 years old at the time of the ALJ's decision, but was 29 on the date last insured – September 30, 1994. (Tr. 14,17.) Her alleged disability began before she attained the age of 24. (Tr. 122). She has a high school education. (Tr. 17.) Plaintiff has past relevant work as a collections agent. (Tr. 17.)

        *1. Plaintiff's Testimony*

At the hearing before the ALJ, Plaintiff recounted symptoms and limitations related to her scoliosis and post traumatic stress disorder ("PTSD"). (Tr. 51.) With regard to the time period prior to her date last insured[2] – September 30, 1994 – Plaintiff testified that she struggled after having her

---

[1] At the hearing, Plaintiff amended her alleged onset date to August 14, 1991. (Tr. 12.)

[2] To be eligible for benefits, a Plaintiff must establish both her disability and her insured status. 42 U.S.C. §§ 423 (a)(1)(A), 423 (c)(1); 20 C.F.R. § 404.130. Plaintiff's insured status expired on September 30, 1994. *Id.* This is also known as Plaintiff's date last insured (DLI). *Moon*

three children in 1988, 1991 and 1992. (Tr. 54.) She stated that she could not take care of her children alone because it was "overwhelming," and she "couldn't think clearly." (Tr. 54.) She testified that she "was crying and just overwhelmed." (Tr. 55.) In addition, she testified that she had trouble paying bills on time. (Tr. 55-56.)

Currently, Plaintiff attends a work study program at Delta College. (Tr. 56-57.) There, she essentially performs administrative tasks such as answering the phones. (Tr. 57.) According to Plaintiff, she does not perform this job well because she cannot get to work on time. (Tr. 57.) However, she is still attending Delta College for an accreditation in diagnostic sonography. (Tr. 59.) She attends classes on Tuesdays and Thursdays from 2:00 p.m. to 5:00 p.m. (Tr. 60.)

Plaintiff also stated that she cannot sit for long periods of time due to her scoliosis. (Tr. 58.)

  2. *Medical Evidence*

    *a. Medical Evidence Prior To The Date Last Insured – September 30, 1994*

The record contains only four pages of treatment notes prior to the expiration of Plaintiff's insured status on September 30, 1994. (Tr. 228-31.) These records consist of treatment notes by Dr. Amy Mills, a psychologist, from approximately July 1991 through January 6, 1992. (Tr. 228-31.) The first note indicates that Dr. Mills diagnosed Plaintiff with PTSD. (Tr. 231.) Dr. Mills also noted Plaintiff's chaotic childhood, including a bitter divorce between her parents, physical abuse and abandonment by her mother, molestation by the father of one of Plaintiff's stepfathers, and an

---

*v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) (citing *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). Plaintiff bares the burden of showing that she suffered a disability on or before her DLI. *Id*. In addition, Plaintiff must show that any alleged disability continued until at least one year before she filed her application, which in this case would be July 18, 2005. 20 C.F.R. § 404.302(b)(3). Therefore, Plaintiff must show that she became disabled prior to September 30, 1994 and that her disability continued until July 18, 2005.

attempted suicide at age eight. (Tr. 231.) Another note indicates that Plaintiff wears a back brace for Scoliosis. (Tr. 230.) In addition, a third note indicates that Dr. Mills prescribed Prozac for Plaintiff. (Tr. 230.)

Plaintiff continued to see Dr. Mills in September of 1991, and related incidents of prior abuse at the hands of her mother and stepfather. (Tr. 229.) On September 25, 1991, Dr. Mills noted that Plaintiff was very upset about the possibility of her husband leaving her. (Tr. 229.)

On October 2, 1991, Dr. Mills noted that Plaintiff and her husband were doing well. (Tr. 229.) Dr. Mills also noted that Plaintiff was "angry at mom for her physical and emotional abuse." (Tr. 229.) Plaintiff wanted to confront her mother, but Dr. Mills encouraged her to "hold off." (Tr. 229.)

On October 9, 1991, Dr. Mills noted that Plaintiff was "doing well," and encouraged her to take a scheduled trip. (Tr. 228.)

On October 23, 1991, Plaintiff told Dr. Mills that she was pregnant. (Tr. 228.) The last note from January 6, 1992 states that Plaintiff is "doing well with PTSD." (Tr. 228.)[3]

*b. Medical Evidence After Date Last Insured*

The medical evidence after September 30, 1994 is a bit more extensive. (Tr. 166-227.)

It appears that Plaintiff started going to Michigan Psychiatric and Behavioral Associates ("MPBA") in Bay City, Michigan on or about May 29, 2002. (Tr. 215.) At that time, Dr. M. Ingram diagnosed Plaintiff with bipolar disorder, type I, and PTSD. (Tr. 220.) She also assigned her a

---

[3] In his opinion, the ALJ indicated that he would consider a medical source statement from Dr. Mills if received by September 25, 2009 – but as of the time of his opinion, no statement had been received. (Tr. 17.)

GAF score of 51-60.[4] (Tr. 220.) MPBA discharged Plaintiff from treatment on January 27, 2004 due to "inactivity." (Tr. 215-16.)

On July 22, 2005, Plaintiff reinitiated therapy with Dr. Foster at MPBA after a "stay at Bridgewater," an alcohol and substance abuse center in Massachusetts. (Tr. 211.) At that time, Dr. Foster diagnosed Plaintiff with bipolar disorder and PTSD, and gave her a GAF of 43.[5] (Tr. 211-13.)

On October 4, 2006, Dr. Ron Marshall reviewed Plaintiff's medical records for the state Department of Disability Services and completed a Psychiatric Review Technique ("PRT") form indicating that he had insufficient evidence to make a medial disposition as to Plaintiff's mental impairments. (Tr. 173-86.)

Dr. Foster and Therapist Vicki Bouckaert from MPBA again treated Plaintiff from June 14, 2007 through February 2, 2008. On their discharge summary they indicated "Client's goals were to be able to process feelings of depression, abandonment, anxiety and anger." (Tr. 209.) They further indicated that Plaintiff "was insightful and receptive while she addressed and worked on these goals in therapy, however progress was hindered due to lack of commitment to therapy sessions." (Tr. 209.) At the time of discharge, MPBA stated that Plaintiff had "Bipolar disorder, alcohol dependence in remission, opioid dependence in limited remission and posttraumatic

---

[4]A GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASSOC., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 30-34 (4th ed., Text Revision 2000). It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 32. A GAF of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning. *Id.*

[5] A GAF of 41 to 50 means that the patient has "[s]erious symptoms . . . or any serious impairment in social, occupational, or school functioning." AMERICAN PSYCHIATRIC ASSOC., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 32.

disorder." (Tr. 210.) Plaintiff's discharge GAF was 50. (Tr. 210.)

Dr. Foster continued to see Plaintiff for Medication Reviews from June 8, 2007 through September 10, 2008. (Tr. 221-27.)

On November 26, 2008, Dr. Lazzara completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) and indicated that Plaintiff could occasionally lift and carry up to 10 pounds. (Tr. 191.) He also indicated that Plaintiff could sit for only two hours at a time, and could stand and walk for only 30 minutes at a time. (Tr. 192.) In conjunction with the Medical Source Statement, Dr. Lazzara wrote a letter that detailed Plaintiff's chief complaints and medical and social history. (Tr. 198-200). In this letter, he noted that Plaintiff "has recently started school doing a work study and is currently working a few hours per week doing reception work which she seems to be able to tolerate." (Tr. 198.)

On January 30, 2009, Plaintiff saw Dr. Natalie Menedes of Saginaw Psychological Services, Inc. (Tr. 202-06.) At that time, Plaintiff told Dr. Menedes that she worked about 18 hours a week and that it was "working out well." (Tr. 203.) In addition, she was a full time student at a two year college. (Tr. 203.) Dr. Menedes diagnosed Plaintiff with Bipolar Disorder. (Tr. 206.) However, she gave Plaintiff a GAF score of 70[6], and stated that her prognosis was good. (Tr. 206.)

### 3. *Vocational Expert's Testimony*

Vocational Expert ("VE") Mary Williams testified at the hearing. The ALJ asked the VE to assume the following hypothetical individual: a younger individual with a high school education and collections work experience, with residual functional capacity for light work with a "sit/stand

---

[6] A GAF of 61 to 70 means that the patient has "some symptoms . . . or some difficulty in social, occupational, or school functioning." AMERICAN PSYCHIATRIC ASSOC., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 34.

option" and only "superficial interpersonal contact with co-workers and the public." (Tr. 62.)

The VE testified that such a person could not perform Plaintiff's past work as a collections agent because it would involve "negotiation" and "confrontation." (Tr. 63.) The VE testified that such a person could perform work as an assembler, machine operator, and inspector, and that there would be 89,000, 125,000 and 23,000 of such jobs available nationally, respectively. (Tr. 63.)

## C. Framework for Disability Determinations

Under the Social Security Act (the "Act"), Disability Insurance Benefits (for qualifying wage earners who become disabled prior to expiration of their insured status) "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied

> without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D. The Administrative Law Judge's Findings

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity "during the period from her amended onset date of August 14, 1991 through her date of last insured of September 30, 1994." (Tr. 14.) At step two, the ALJ found that Plaintiff had the following severe impairments: posttraumatic stress disorder and scoliosis. (*Id*.) Next, the ALJ concluded that none of these impairments, alone or in combination, met or medically equaled a listed impairment. (*Id*.) Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity to perform light work with a "sit/stand option" and "only superficial interpersonal contact with coworkers and the public." (Tr. 15.) At step four, the ALJ found that Plaintiff could not perform her past relevant work as a collections agent. (Tr. 17.) At step five, the ALJ relied on VE testimony in response to his hypothetical, and found that work existed in significant numbers that Plaintiff could perform: "assembler, with approximately 89,000 jobs nationally; machine operator, with approximately 125,000 jobs nationally; and inspector, with approximately 23,000 jobs nationally." (Tr. 18.)

### E. Standard of Review

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). In deciding whether substantial evidence supports the ALJ's decision, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal

9

quotation marks omitted)). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

**F. Analysis**

In her Motion for Summary Judgment, Plaintiff contends that the ALJ erred by questioning the Vocational Expert with an inaccurate hypothetical. (Pl.'s Mot. Summ. J. at 9-14.) Plaintiff claims that the ALJ erred in discounting Plaintiff's testimony regarding alleged disabling pain stemming from her scoliosis and functional limitations stemming from her PTSD in forming the hypothetical. (*Id*.) Plaintiff also claims that the ALJ erred by not including his findings at step three in his hypothetical to the VE. (*Id*. at 13.)

The Sixth Circuit states that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's individual physical and mental impairments." *Varley v. Sec'y of Health & Human Servs*, 820 F.2d 777, 779 (6th Cir. 1987) (internal citations omitted); *Webb v. Comm'r of Soc. Sec*., 368 F.3d 629, 632 (6th Cir. 2004). Moreover, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Sec'y of Health & Human Servs*., 823 F.2d 922, 927-28 (6th Cir. 1987).

Regarding an individual's credibility, SSR 96-7p states:

> [T]he adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. The finding of credibility of an individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." (citation omitted.)

Moreover, SSR 96-7p contains a procedural requirement that requires the ALJ's decision to list "specific reasons" for his credibility determination in his decision:

> The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

An ALJ's findings regarding the credibility of an applicant are to be accorded great weight and deference, particularly since only the ALJ is charged with the duty of observing a witness's demeanor. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying.") (citations omitted).

### *1. The ALJ Properly Evaluated Plaintiff's Testimony Regarding Her Scoliosis*

In her brief, Plaintiff contends that the ALJ erred in failing to properly analyze her assertions of disabling pain. (Pl. Mot. Summ. J., at 6-9.) The record reveals, however, that Plaintiff never complained about disabling pain prior to the expiration of her insured status, or, during any period for that matter. (Tr. 46-65, 228-31.) There is absolutely no testimony or medical records indicating

Plaintiff suffered disabling pain as a result of her scoliosis. (Tr. 1-231.) The full extent of Plaintiff's testimony regarding pain was that she was not able to sit for long periods of time. (Tr.46-65.) The ALJ included this limitation in his hypothetical. (Tr. 62.) In addition, there is only one reference to Plaintiff's scoliosis in the medical records prior to September 30, 1994. (Tr. 230.) There is simply nothing in the record to support an argument of disabling pain.[7] This Court finds substantial evidence supports the ALJ's finding that Plaintiff was not physically disabled prior to the expiration of her insured status. The ALJ's hypothetical was accurate, and, therefore, so was his reliance on the testimony in response to that hypothetical. *Varley*, 820 F.2d at 779; *Webb*, 368 F.3d at 632.

### 2. *The ALJ Properly Evaluated Plaintiff's Testimony Regarding Her Mental Impairments*

The ALJ also followed the mandate provided by SSR 96-7p with regard to Plaintiff's testimony regarding her mental impairments. The ALJ considered the entire case record in determining first, whether Plaintiff had an underlying medically determinable impairment; and second, whether the impairment could "reasonably be expected to produce the claimant's pain or other symptoms:"

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible . . . .

(Tr. 18.)

The ALJ gave a very explicit reason for discounting Plaintiff's testimony regarding her mental impairments: the medical treatment records prior to September 30, 1994 regarding Plaintiff's PTSD

---

[7] Accordingly, this case is distinguishable from the case Plaintiff relies on, *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994), because neither Plaintiff's testimony nor any medical records suggest she had disabling pain prior to the expiration of her insured status, or during any time for that matter.

were scarce, and, indeed, indicated that she was "doing well." (Tr. 17, 228-31.) This reason is grounded in substantial evidence and articulated in the ALJ's decision as required by SSR 96-7p. While the four pages of relevant medical records include Plaintiff's reporting of some of her history of childhood abuse, the only conclusions or opinions from Dr. Mills are that Plaintiff is "doing well." (Tr. 228.) Accordingly, substantial evidence supports the ALJ's omission of Plaintiff's testimony regarding the intensity of her symptoms with regard to her PTSD in his hypothetical.

### 3. The ALJ's Hypothetical to the VE was Accurate

Plaintiff's third argument is that the ALJ's hypothetical to the VE was inaccurate because it failed to account for all of the factual findings regarding the B criteria mental limitations that the ALJ made at step three of his analysis. (Pl.'s Mot. Summ. J. at 13.) Specifically, Plaintiff alleges that, while the ALJ's hypothetical accounts for her moderate restriction in social functioning, it did not adequately account for her moderate restriction in daily activities. (Pl.'s Mot. Summ. J. at 13; Tr. 15.) In other words, the ALJ's Residual Functional Capacity ("RFC") assessment did not take into account his finding that Plaintiff had "moderate difficulties" in "activities of daily living." (*Id.*)

SSR 96-8p provides that an "RFC assessment must be based on all of the relevant evidence in the case record," which includes "medical history," "medical source statements" and "[e]ffects of symptoms . . . that are reasonably attributed to a medically determinable impairment." 1996 WL 374184, at *5. In assessing an RFC, an ALJ "must consider limitations and restrictions imposed by all the individual's impairments, even those that are not 'severe.'" *Id.* In addition, SSR 96-8p also provides that the ALJ's RFC assessment must be transparent to the reviewing court. *Id.*

On the other hand, a court of this district has held that "[a] 'substantiality of evidence evaluation does not permit a selective reading of the record.'" *Hess v. Comm'r of Soc. Sec.*, No. 07-

131382008 WL 2478325, *7 (E.D. Mich. 2009) (citing *Davis v. Apfel*, 133 F.Supp.2d 542, 547 (E.D. Mich. 2001)). Specifically, the reviewing court must not analyze the hypothetical in isolation to determine whether the RFC incorporates Plaintiff's limitations, but on the "record as a whole." *Id*.

Applying this regulatory and case law , the ALJ's hypothetical was accurate, and, therefore, so was his reliance on the testimony in response to that hypothetical. *Varley*, 820 F.2d at 779 (an answer to a hypothetical question constitutes substantial evidence if the hypothetical accurately portrays an individuals impairments); *Webb*, 368 F.3d at 632 (a hypothetical does not need to list all of a Plaintiff's maladies in order to be accurate).

Plaintiff maintains that the hypothetical question posed should have taken into account the fact that Plaintiff has "moderate" limitations in activities of daily living such as childcare, cooking, cleaning, paying the bills, and being punctual. (Pl.'s Mot. Summ. J. at 13; Tr. 15, 57.) Just because the ALJ noted these complaints at Step Three, does not mean he is obligated to include them into his RFC and hypothetical. Not all B criteria limitations must be included in an ALJ's RFC or hypothetical. *Hess*, No. 07-131382008 WL 2478325, at *7. An omission of a B criteria finding may be proper where the ALJ has included some type of mental limitations in the hypothetical, and taking in all the evidence of the record, substantial evidence supports the interpretation that the ALJ's mental limitation fairly accounts for the limitation. *Hess*, No. 07-131382008 WL 2478325, at *7.

In this case, as in *Hess*, "substantial evidence, including the PRT, supports the ALJ's choice of hypothetical limitations." *See Hess,* No. 07-131382008 WL 2478325, at *7. Specifically, the ALJ stated: "there is insufficient evidence to support the alleged severity of her impairments during the period at issue." (Tr. 16.) This is supported by Dr. Marshall's PRT assessment of Plaintiff's medical records. (Tr. 173-86.) Dr. Marshall indicated there was insufficient evidence in the record to make

a medical disposition as to Plaintiff's mental impairments. (*Id*.)

Therefore, taken in isolation, the hypothetical limitations of light work and "superficial interpersonal contact with co-workers and the public" might appear inadequate to account for Plaintiff's moderate limitations in daily activities. However, the record as a whole indicates that the hypothetical question and the ALJ's finding of moderate limitations in daily functioning at Step Three are not incompatible. Indeed, while the ALJ noted Plaintiff's testimony regarding problems with childcare, cooking, cleaning and paying bills, he also noted that Plaintiff "is attending college on a part-time basis and takes two online courses." (Tr. 17.) Furthermore, it is noteworthy that the VE limited her testimony to jobs from the "unskilled category." (Tr. 63.) This designation takes into account some limitations in mental functioning. Moreover, the Plaintiff has failed to point out how working as an assembler, machine operator, or inspector is incompatible with her difficulty in juggling cooking, cleaning, childcare and paying bills on time.

Lastly, Plaintiff's counsel questioned the VE as to absences and an inability to concentrate. (Tr. 64.) The VE testified that "one absence a month" and impaired concentration that resulted in 20% of Plaintiff's work-time being unproductive would preclude work. (Tr. 64.) However, the inference that Plaintiff would be absent once per month or have impaired concentration that resulted in 20% non-productive work time is unsubstantiated. Therefore, such a limitation did not have to be included in the hypothetical. *Stanley v. Secretary of Health & Human Servs*., 39 F.3d 115, 118-19 (6th Cir. 1994) (The ALJ is not required to "incorporate unsubstantiated complaints into his hypotheticals.) (citing *Hardaway v. Secretary of Health & Human Servs*., 823 F.2d 922, 927-28 (6th Cir. 1987)). Accordingly, as stated above, the ALJ's hypothetical was accurate, and so was his reliance on the testimony in response to that hypothetical. *Varley*, 820 F.2d at 779; *Webb*, 368 F.3d

at 632.

### G. Conclusion

For the foregoing reasons, this Court finds that the ALJ followed the mandates of SSR 96-7p in assessing Plaintiff's credibility, and substantial evidence supports the ALJ's finding that Plaintiff was not disabled during the period at issue. Accordingly, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, that Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED.

### III. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. A copy of any objections is to be served upon this magistrate judge. E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

                                                                       s/Laurie J. Michelson  
                                                                       LAURIE J. MICHELSON  
                                                                       UNITED STATES MAGISTRATE JUDGE

Dated:  June 7, 2011

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on June 7, 2011.

                                          s/Jane Johnson
                                          Deputy Clerk